UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY HOLZHAUER, <br>   Plaintiff, <br>  v. <br> GOLDEN GATE BRIDGE HIGHWAY & TRANSPORTATION DISTRICT, <br>   Defendant. | Case No. 13-cv-02862-JST <br><br> **ORDER RE: MOTIONS IN LIMINE** <br><br> Re: ECF Nos. 114, 116 |

The Court heard argument concerning the parties' motions in limine on June 5, 2015.

<u>Motion at ECF No. 114: Regarding Dr. Barry Ben-Zion</u>

By this motion, Defendant Golden Gate Bridge, Highway & Transportation District ("the District") seeks to exclude the testimony of Plaintiff David Rhoades' economic damages expert Dr. Barry Ben-Zion pursuant to Federal Rule of Evidence 702.

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case.

The District argues that Dr. Ben-Zion's report should be excluded because it lacks a sufficient factual foundation under Rule 702(b) and fails to apply reliable principles and methods under Rule 702(c). "[T]he admission of expert testimony generally lies within the sound discretion of the trial court." <u>Burlington N., Inc. v. Boxberger</u>, 529 F.2d 284, 287 (9th Cir. 1975). Although courts should screen expert testimony that is premised upon "rampant speculation," <u>id.</u>, "it is not proper for the Court to exclude expert testimony merely because the factual bases for an

expert's opinion are weak." Andler v. Clear Channel Broad., Inc., 670 F.3d 717, 729 (6th Cir. 2012) (quoting Boyar v. Korean Air Lines Co., 954 F. Supp. 4, 7 (D.D.C. 1996)).

In support of its motion to exclude Dr. Ben-Zion's report, the District points to the Third Circuit's decision in Benjamin v. Peter's Farm Condo. Owners Ass'n, 820 F.2d 640 (3d Cir. 1987). There, the Third Circuit granted a new trial where a testifying economic expert had calculated the plaintiff's lost earnings "figure [] based solely on [plaintiff's] personal belief as to how much money he could earn together with his personal records reflecting money received and disbursed during the three month period after the injury." Id. at 643. Although the plaintiff told the expert that he "felt he was going to work part-time" and make approximately $10,000 a year in his post-injury, part-time employment capacity, he had shown the expert records that did not support this estimate. Id. at 641. The Benjamin court stated that "[a]lthough mathematical exactness is not required, testimony of post-injury earning capacity must be based upon the proper factual foundation." Id. The court concluded that "reliance on [plaintiff's] personal belief as to his capabilities was improper because [plaintiff's] belief was merely speculative" and "the figure derived from that reliance was thus without proper foundation and insufficient for a jury properly to assess [plaintiff's] damages." Id.

The District argues that Dr. Ben-Zion's testimony should be excluded because his lost earnings calculations are not based on sufficient facts or data, but instead defer to "Rhoades' self-serving representation to Dr. Ben-Zion that he will not make a full income recovery until 2021." ECF No. 114 at 5. The District contends that Dr. Ben-Zion's assumption that Rhoades will take until the beginning of 2022 to return to his full earning capacity fails to account for Rhoades' deposition testimony, which indicates that he has already returned to full-time work. Id. The District also argues the report should be excluded because it does not apply reliable principles and methods for calculating economic loss and fails to reflect the speculative nature of the real estate market in which Rhoades works. Id.

The Court disagrees with the District's characterization of Dr. Ben-Zion's report as lacking a sufficient factual foundation or failing to use reliable methods. In preparing the report, Dr. Ben-Zion analyzed Rhoades' historical income, pre- and post-accident. Dr. Ben-Zion did account for

1  the speculative nature of the real estate market, observing that Rhoades' income "fluctuates greatly
2  from year to year, given that there is typically a lag between invest time and effort on real estate
3  properties and reaping the rewards from these investments." ECF No. 141 at 7.  Therefore, Dr.
4  Ben-Zion determined Rhoades' pre-injury earnings "based on the average income he earned over
5  several years prior to his injury."  Id.  Dr. Ben-Zion projected that Rhoades' income would have
6  "increased by the rate of inflation" on average.  Id. at 8.  Dr. Ben-Zion looked to Rhoades'
7  reported post-injury income in 2013 and 2014 and projected that Rhoades "will be able to
8  gradually increase his income at a compound rate to ultimately regain his earning capacity by
9  1/01/2022."  Id.

10  It is true that Dr. Ben-Zion relied heavily on Rhoades' statements about the nature of his
11  business and the real estate market in determining that it would take Rhoades until 2022 to return
12  to his full earning capacity.  Specifically, Rhoades had informed Dr. Ben-Zion that "because he
13  was absent from active participation for a period of time, [] it will take him seven or eight years to
14  regain the kind of clientele he used to have before the injury."  ECF No. 114-1 at 30:20-24.
15  Unlike the statements made by the plaintiff in Benjamin, which were flatly contradicted by the
16  evidence shown to the expert, Rhoades' statements are not belied by the record or so speculative at
17  to justify the exclusion of Dr. Ben-Zion's report.  Moreover, Rhoades possesses knowledge
18  regarding the effects of his injuries on his real estate investment portfolio and client base that Dr.
19  Ben-Zion was entitled to rely on in the preparation of his report.  Specifically, Rhoades stated that
20  investments often take several years to pay off and that his relationships with various clients were
21  disrupted during the period when he was not able to work at full capacity due to his injuries.
22  Rhoades' failure to identify specific deals that he missed out on or clients he lost during the period
23  when he was injured render Dr. Ben-Zion's report vulnerable to criticism and vigorous cross-
24  examination, but do not justify a finding that Dr. Ben-Zion's conclusions are baseless or
25  speculative.

26  Additionally, the District's argument that Dr. Ben-Zion's report is in meaningful conflict
27  with Plaintiff Rhoades' deposition testimony is not supported by the record.  Although Rhoades
28  stated at deposition that he was "[s]taying as busy" as he had been before the accident in 2012, he

3

never stated that he had already returned to his full pre-injury earning capacity. ECF No. 114-1 at 24. The Court also does not find it significant that Dr. Ben-Zion chose to focus on Rhoades' income in the eight years immediately prior to the injury, but did not "take into account any of Mr. Rhoades' financial records prior to 2005." ECF No. 114 at 5. Indeed, it stands to reason that Rhoades' most recent pre-injury income would be most relevant to any projection of his future earnings.

Therefore, the Court will deny the District's motion to exclude the testimony of Plaintiff Rhoades' economic damages expert Dr. Ben-Zion.

Motion at ECF No. 116: Regarding Dr. Johanna Moss

By this motion, the District moves to exclude the testimony of Plaintiff Mary Holzhauer's economic expert Dr. Johanna Moss. The District argues that Dr. Moss "fails to rely on verifiable financial record regarding Mr. Holzhauer's earnings" and "has made unjustified assumptions and relied on insufficient facts." ECF No. 116. The District contends that Dr. Moss based her estimates on Holzhauer's economic losses on answers to interrogatories and did not consult Holzhauer's pay stubs or W-2 forms. Id. at 2. The District notes that Dr. Moss admitted at deposition that it is "not that common" to "only have answer to interrogatories" as the basis for an expert opinion. Id. at 3.

In response, Holzhauer argues that Dr. Moss in fact also testified that she had relied on Mr. Holzhauer's 1099s and Schedule C Statements of business income in preparing her report, in addition to interrogatory responses. ECF No. 136 at 3. Holzhauer further contends that Dr. Moss's reliance on the interrogatory responses was a reasonable and conservative projection, as Decedent had begun new work shortly prior to his death and was no longer working in the self-employed capacity reflected by the available earnings statements. Id.

The Court concludes that Dr. Moss's report is admissible pursuant to Rule 702 as it is based on a sufficient factual foundation under the circumstances. Dr. Moss stated that she consulted Decedent's 1099s and Schedules Cs, in addition to the interrogatory responses. The

/ / /

/ / /

4

District can cross-examine Dr. Moss regarding her reliance on interrogatories and her discounting of the past earnings reflected on the 1099 and Schedule Cs.

The Court will deny the District's motion to exclude Dr. Moss's testimony.

IT IS SO ORDERED.

Dated: June 17, 2015

_____
JON S. TIGAR
United States District Judge