UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY HOLZHAUER,<br><br>        Plaintiff,<br><br>    v.<br><br>GOLDEN GATE BRIDGE HIGHWAY & TRANSPORTATION DISTRICT,<br><br>        Defendant.<br><br>AND RELATED CROSS-CLAIMS. | Case No. 13-cv-02862-JST<br><br>**ORDER DENYING DEFENDANT'S PETITION FOR LIMITATION OF LIABILITY** |

On February 16, 2013, the ferry SAN FRANCISCO collided with a speedboat on the San Francisco Bay. The collision killed the driver of the speedboat, Harry Holzhauer, and seriously injured his fellow passenger and owner of the boat, David Rhoades. At trial, a jury found Defendant Golden Gate Bridge, Highway & Transportation District ("District") partially responsible for the accident.

The District now petitions the Court to limit its liability in this action to the value of the ferry SAN FRANCISCO, arguing that it lacked privity or knowledge of the acts that caused the accident. Claimants Mary Holzhauer (Harry Holzhauer's widow) and David Rhoades ("Claimants") dispute the District's contention. They further argue that, even if the District has proven a lack of privity and knowledge, it places too low a value on the ferry.

For the reasons set forth below, the Court concludes that the District has not met its burden of showing a lack of privity and knowledge. It therefore denies the petition without reaching the question of the ferry's value.

## I. BACKGROUND

In the late afternoon on February 16, 2013, Harry Holzhauer and David Rhoades were travelling in Rhoades' speedboat on the San Francisco Bay. Holzhauer was operating the boat with Rhoades' permission. At the same time, the ferry SAN FRANCISCO was crossing the Bay, making its customary voyage from Sausalito to the District's terminal in San Francisco. The two boats collided, killing Holzhauer and seriously injuring Rhoades. Both Rhoades and the captain of the ferry SAN FRANCISCO, Captain Shonk, claimed not to have seen each other's vessel until it was too late. The evidence showed that Captain Shonk was using his cell phone immediately before the collision.

Harry Holzhauer's widow, Mary Holzhauer, and David Rhoades filed negligence claims against the District following the accident. The District filed a Complaint for Exoneration From or Limitation of Liability pursuant to 46 U.S.C. §§ 30501-30512 (the Limitation of Liability Act). ECF No. 1 in Case No. 3.13-cv-05875-JST. On November 24, 2014, the District's Limitation action was consolidated with the Claimants' claims against the District and the related crossactions. ECF No. 50. Thereafter, the parties agreed that "the issues raised by the District's Limitation of Liability Complaint are to be decided by the Court." ECF No. 105.

The agreed-upon limitations issues are as follows: (1) whether the District had "privity and knowledge" of the conduct on which the District's liability is predicated; (2) if not, then what the fair market value of the ferry was at the conclusion of the voyage during which the accident occurred (i.e., the limitation fund); and (3) how to allocate the limitation fund. ECF No. 105 at 3. The parties proposed that the limitation of liability issues be bifurcated and tried to the court following a jury trial on the underlying liability case, id. at 22, which proposal the Court adopted, ECF No. 145.

At trial, a jury returned a verdict in favor of Claimants and awarded damages to Claimants totaling $5,276,306. ECF No. 261. The jury found the District 30 percent liable for Claimants' injuries and the speedboat operator, decedent Harry Holzhauer, 70 percent liable. Id. The District now asks the Court to limit its liability, pursuant to the Limitation of Liability Act, to the value of the SAN FRANCISCO at the end of its voyage on February 16, 2013.

## II. LEGAL STANDARD

The Limitation of Liability Act,[1] 46 U.S.C. §§ 30505 *et seq.*, "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 439 (2001). First, the plaintiff or claimant must establish what act or condition caused the loss. In re BOWFIN M/V, 339 F.3d 1137 (9th Cir. 2003). Next, the shipowner has the burden of proving that the act or condition was outside its privity or knowledge. Id. If the shipowner meets this burden, "the owner's liability is limited to the value of the ship." In re: Santa Maria Fishing Inc., No. CV1501257BROJPRX, 2015 WL 12662335, at *2 (C.D. Cal. July 2, 2015) (quoting In re City of N.Y.C., 522 F.3d 279, 283 (2d Cir. 2008)). Whether a defendant was without privity or knowledge is a question of fact. Coryell v. Phipps, 317 U.S. 406, 411 (1943) ("Privity like knowledge turns on the facts of particular cases.").

If the shipowner's liability is limited to the value of the vessel, that amount becomes a fund from which all claims against the shipowner must be paid. In re: Santa Maria Fishing Inc., No. CV1501257BROJPRX, 2015 WL 12662335, at *2 (C.D. Cal. July 2, 2015) (citing 46 U.S.C. § 30511(c)).

The Act has been subject to substantial criticism. Judge Kozinski has called the Act "an anachronism, a holdover from the days when encouraging commerce by sea was considered more important than providing full redress to victims of maritime accidents," and has stated that "such a law no longer makes sense." Delta Country Ventures, Inc. v. Magana, 986 F.2d 1260, 1266–67 (9th Cir. 1993). Another district court in this circuit has noted that the Act is "little-used today" and

> has been described as "a relic of the clipper ship era in which it was launched," Craig H. Allen, The Future of Maritime Law in the Federal Courts: A Faculty Colloquium, 31 J. Mar. L. & Com. 263, 263 (2000), and "an 'anachronism, a principle which should be relegated to the era of wooden hulls,'" Mark A. White, The 1851 Shipowners' Limitation of Liability Act: Should the Courts Deliver the Final Blow?, 24 N. Ill. U.L.Rev.. 821 (2004) (quoting Carter T. Gunn, Limitation

---

[1] Readers seeking a colorful and informative history of the Act are directed to Judge Robart's opinion in In re Bell, No. C12-1126JLR, 2014 WL 129642 (W.D. Wash. Jan. 13, 2014).

of Liability: United States and Convention Jurisdictions, 8 Mar. 29, 29 (1983)).
In re Bell, No. C12-1126JLR, 2014 WL 129642, at *1 (W.D. Wash. Jan. 13, 2014). Nonetheless, "despite its old age," id., and the expression of widespread disapproval, the Act remains good law.

### III. JURISDICTION

The Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333.

### IV. ANALYSIS

The first step in analyzing a petition for limitation of liability is to determine the negligent act or unseaworthy condition that caused the plaintiffs' harm. BOWFIN, 339 F.3d at 1137. The plaintiff or claimant bears the burden of establishing this element. Id. As the Ninth Circuit stated in In re Hechinger, 890 F.2d 202 (9th Cir.1989), "Once a proper limitation of liability petition has been filed, the court must first determine what acts of negligence or conditions of unseaworthiness caused the accident . . . . That is, a liability must be shown to exist." Id. at 207 (citations and modifications omitted).

The task is not difficult here. The parties agree that the most probable basis of the jury's finding that the District was negligent is Captain Shonk's use of a personal cell phone in the moments before the collision. See ECF No. 316 (District's Limitation of Liability Brief) at 3 ("The Claimants' closing arguments at the jury trial show that their focus was almost exclusively on urging the jury to find that Captain Stacy Shonk was distracted on a cell phone call during the time he was allegedly making a course and speed change as the overtaking vessel, and therefore he failed to see the speedboat."); id. at 7 ("[T]he 30% fault allocated to the District was most likely based on Claimants' arguments that Capt. Shonk was distracted by his cell phone call and therefore did not see the speedboat in time to prevent the collision."); ECF No. 331 (Claimants' Limitation of Liability Brief) at 14 ("[T] he parties agree that the most probable basis for the jury finding the District negligent was the Captain's use of his personal cell phone in the moments before the collision.").

This finding was supported by substantial evidence. Expert witness Captain Katherine Sweeney testified that it was not safe for Captain Shonk to use his cell phone and that she had never used her cell phone on the bridge. She further testified that it would never be safe for the

person serving as a lookout to use their cell phone.  Captain Mitchell Stoller testified that a cell phone should not be used while serving as the dedicated lookout.  The evidence at trial showed that the San Francisco Bay is a busy, highly crowded waterway used extensively by both recreational boaters and commercial vessels.  On this evidence, the jury could easily conclude, and did conclude, that Captain Shonk's cell phone use contributed to the accident, and was the basis for its finding of partial fault on the part of the District.  In short, the Court agrees with the parties' assessment, and finds that Captain Shonk's cell phone use was the "causative agent" of the injuries to Claimants.  In re Bell, 2014 WL 129642 at *5.

The second step is for the Court to determine "whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness" that caused the accident.  Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp., 768 F.2d 1558, 1564 (11th Cir. 1985).  The burden falls on the shipowner, who must prove the absence of privity or knowledge.  In other words, the shipowner must prove the negative.

"Privity or knowledge has been frequently defined as follows:

> As used in the statute, the meaning of the words "privity or knowledge," evidently, is a personal participation of the owner in some fault, or act of negligence, causing or contributing to the loss, or some personal knowledge or means of knowledge, of which he is bound to avail himself of a contemplated loss, or a condition of things likely to produce or contribute to the loss, without adopting appropriate means to prevent it.  There must be some personal concurrence, or some fault or negligence on the part of the owner himself, or in which he personally participates, to constitute such privity, within the meaning of the Act, as will exclude him from the benefit of its provisions.

Petition of M/V Sunshine, II, 808 F.2d 762, 763–64 (11th Cir. 1987) (quoting Lord v. Goodall, Nelson & Perkins S.S. Co., 15 F.Cas. 8,506 (C.C. Cal. 1877)).

The shipowner's "burden is not met by simply proving a lack of actual knowledge, for privity and knowledge is established where the means of obtaining knowledge exist, or where reasonable inspection would have led to the requisite knowledge."  Hercules, 768 F.2d at 1564 (citation omitted).  Thus, "knowledge" consists not only of what the shipowner actually knows, but also what it could discover if it conducted a reasonable investigation sufficient to apprise itself "of conditions likely to produce or contribute to a loss."  Id. (citation omitted).

The Court finds that the District has failed to meet its burden of demonstrating a lack of

privity or knowledge. The District had no policy regarding the use of personal cell phones by its captains. R.T. 1717:24-1718:1. The District also knew that its captains carried personal cell phones while operating the District's ferries, and permitted their use. R.T. 1718:19-1719:16. In this case, Captain Shonk, while operating the ferry SAN FRANCISCO, was actually using his cell phone immediately preceding the collision to speak with shoreside personnel. Therefore, the District cannot claim that its own lack of training or policy regarding the foreseeable use of a cell phone was beyond its privity or knowledge. Id. at 1577. This is particularly true where, as here, the District had actual knowledge of the practice that led to the collision. Id. Accordingly, the Court finds that the District failed to meet its burden of demonstrating a lack of privity or knowledge.

## CONCLUSION

For the foregoing reasons, the District's petition is denied.[2]

IT IS SO ORDERED.

Dated: December 15, 2016

_____
JON S. TIGAR
United States District Judge

---

[2] In light of the Court's conclusions regarding privity, it declines to reach the question of the San Francisco's value.