UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY HOLZHAUER, <br>         Plaintiff, <br>     v. <br> GOLDEN GATE BRIDGE HIGHWAY & TRANSPORTATION DISTRICT, <br>         Defendant. | Case No. 13-cv-02862-JST <br><br> **ORDER DENYING MOTION FOR NEW TRIAL** <br> Re: ECF No. 162 |

Before the Court is Plaintiff Mary Holzhauer's Motion for New Trial. The Court will deny the motion.

**I.     BACKGROUND**

On February 16, 2013, the ferry SAN FRANCISCO, operated by Defendant Golden Gate Bridge, Highway & Transportation District ("District"), collided with a speedboat on the San Francisco Bay. The collision killed the driver of the speedboat, Harry Holzhauer, and seriously injured his fellow passenger and owner of the boat, David Rhoades. Mr. Holzhauer's widow, Mary Holzhauer ("Plaintiff"), and David Rhoades filed negligence claims against the District following the accident.

Mr. Rhoades and Mrs. Holzhauer both made claims for economic and noneconomic damages. ECF No. 1; ECF No. 30. Mrs. Holzhauer's adult sons, however, made claims only for noneconomic damages. They sought damages for:

> "1.   The loss of Harry Holzhauer's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.
>
> 2.   The loss of Harry Holzhauer's training and guidance."

ECF No. 262 at 35. During trial, Plaintiff's sons, Timothy and Jeffery Holzhauer, testified about their relationship with their father. Timothy Holzhauer testified that his father was an important

figure in his professional life: his father helped him build his business, provided career guidance, and helped him get jobs in real estate appraisal and teaching over the years. ECF No. 362-1 at 3. He also testified to having a close personal relationship with his father. He described his father as his "mentor" and said he spoke to him on an almost daily basis. Id.

Jeffrey Holzhauer also testified to having a close relationship with his father. He testified that he had worked with his father in the past and had plans to continue working with him in the future. Id. Jeffrey Holzhauer described his father as a big moral supporter and a "protector." Id. at 4. Both sons testified that their father had promised to help pay his grandchildren's college tuitions. Id. at 3.

Mary Holzhauer reiterated that her husband had a close relationship with their sons. Id. at 4. She testified that she and her husband regularly traveled with their sons and grandchildren, that they had purchased timeshares to vacation together, and that her husband was the "go-to-guy" for the entire family. Id. Mrs. Holzhauer also shared photographs of Mr. Holzhauer with his sons and grandchildren. Id.

At trial, the jury received the same instructions concerning noneconomic damages for both Mrs. Holzhauer and her sons. ECF No. 262 at 35. The jury was told that "[n]o fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense." Id. After deliberating, the jury found Mrs. Holzhauer had proven $1,000,000 in noneconomic damages.[1] ECF No. 355 at 1-2. It found her sons had proven none. Id.

Plaintiff now moves for a new trial as to the singular issue of the noneconomic damages suffered by Timothy and Jeffrey Holzhauer. ECF No. 162. The District opposes the motion. ECF No. 367.

## II. LEGAL STANDARD

"A plaintiff's path towards a new trial based on inadequate damages is feasible, but formidable." D'Amato v. Lillie, No. CV-06-0314-EFS, 2008 WL 4735141, at *2 (E.D. Wash.

---

[1] The jury also found that Mrs. Holzhauer had proven $546,747 in past and future economic damages. ECF No. 261 at 3.

2

Oct. 23, 2008) (citing Mekdeci v. Merrell Nat'l Labs., 711 F.2d 1510, 1513 (11th Cir. 1983)). A trial court may grant a new trial on all or some issues if "the verdict is contrary to the clear weight of the evidence . . . or to prevent, in the sound discretion of the trial court, a miscarriage of justice." Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001) (internal citation omitted). However, "a district court may not grant a new trial simply because it would have arrived at a different verdict." Id.; see also Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1084 (9th Cir. 2009) (holding that a "district court cannot substitute its evaluations for those of the jurors") (internal citation omitted). Rather, to grant a new trial, "the trial court must have a firm conviction that the jury has made a mistake." Landes Contr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir. 1987). Courts should be cognizant that "in cases involving intangible, non-economic losses" determining damages "is a matter peculiarly within a jury's ken." Smith v. Kmart Corp., 177 F.3d 19, 30 (1st Cir. 1999) (internal quotations omitted).

## III. ANALYSIS

Plaintiff contends that the jury's conclusion that her sons proved no noneconomic loss "was contrary to the clear weight of evidence" and warrants a new trial on the question. ECF No. 362-1 at 2. Although Plaintiff concedes the jury instructions were correct and that the jury understood them – as evidenced by the jury's "reasoned award" of $1,000,000 in noneconomic damages for her – Plaintiff contends her sons' trial testimony clearly demonstrated they also suffered significant noneconomic loss. Id. at 6. Because the District presented no evidence disputing this testimony, Plaintiff argues "[t]here was simply no way the jury could reasonably find that Tim and Jeff suffered no loss." ECF No. 374 at 4.

The District does not dispute that Plaintiff's sons had a close relationship with their father, but contends the intangible nature of noneconomic damages means their loss was a "quintessential jury question" that the Court should not second guess. ECF No. 376 at 2. The jury, the District argues, received the correct instructions, which Plaintiff concedes they understood, but Plaintiff simply did not meet its burden "of proving damages by preponderance of the evidence." Id. Therefore, the District contends, the Court should deny Plaintiff's motion. Id.

3

The Court is not convinced that the jury's finding was "contrary to the clear weight of the evidence." See Silver Sage, 251 F.3d at 819. The intangible nature of "love, companionship . . . training and guidance" makes it difficult for any court to reach a "firm conviction" that a jury made a mistake evaluating such questions. See Landes, 833 F.2d at 1372. That is why, when evaluating intangibles such as these, courts recognize the process is a matter "peculiarly within a jury's ken." Smith, 177 F.3d at 30.

The Court also has no reason to believe there were flaws in the jury's deliberation process that would warrant a new trial. The parties agree the jury instructions were correct and that the jury understood those instructions. See ECF No. 362-1 at 6; ECF No. 367 at 3. And there is no indication the jury failed to perform a reasoned analysis. The mere existence of a discrepancy between the jury's award for Mrs. Holzhauer ($1,000,000) and her sons ($0) does not necessarily mean the analysis was unreasonable, and in fact, may signal the opposite. See Bear ex rel. Bloom v. Ford Motor Co., No. CV-05-253-EFS, 2008 WL 2230743, at *9 (E.D. Wash. May 28, 2008) (finding that "[m]ixed verdicts suggest that the jury rationally evaluated the evidence during deliberations").

## CONCLUSION

The Court denies Plaintiff's motion for a new trial on the issue of noneconomic damages suffered by Timothy and Jeffrey Holzhauer.

IT IS SO ORDERED.

Dated: August 7, 2017

_____
JON S. TIGAR
United States District Judge

4